United States District Court
Southern District of Texas
**ENTERED**
August 16, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GREG CONTIS, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 4:16-CV-00589 |
| § | |
| DIGCO UTILITY CONSTRUCTION, L.P., § | |
| § | |
| Defendant. § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced cause is Plaintiffs' Motion for Conditional Class Certification and Notice, filed November 4, 2016. Doc. 13. Defendant filed its Response to Plaintiff's Motion on December 22, 2016. Doc. 16. Plaintiffs filed their Reply on January 3, 2017. Doc. 17. After considering these documents and the applicable law, the Court hereby GRANTS Plaintiff's Motion for Conditional Class Certification and Notice.

### I. Background

Plaintiffs filed the above-referenced case alleging that Defendant violated the Fair Labor Standards Act ("FLSA" or "Act") by failing to pay overtime as mandated by the Act. Plaintiffs were employed by Defendant as "Field Service Representatives" or "Service Technicians." Doc. 13 at 1. Their job duties consisted primarily of installing and repairing gas lines and meters in residential and commercial buildings. *Id.* Other responsibilities included attending company meetings, obtaining supplies for each work order, and maintaining company vehicles. *Id.* at 2–3. Employees were generally paid by a compensation scheme known as "piece rate" or "unit pay" whereby each type of task has a set value. Doc. 16 at 3–4. For example, reconnecting a gas meter after non-payment would earn the employee $10.71, while installing a new gas meter would earn $13.26. Doc. 16-2 at 1.

Because the employees were not paid a set hourly rate, overtime was calculated as follows: first, the unit pay of all tasks completed that week is added together, and that total is divided by the number of hours worked that week. Doc. 16 at 5–6. The resulting figure represents the average hourly pay rate. *Id.* One half of this hourly pay rate is the overtime premium hourly rate. *Id.* The overtime premium hourly rate is multiplied by the total number of hours above 40 worked that week. *Id.* The product is the overtime pay for that week. *Id.* The paycheck consists of the total unit pay plus the overtime pay.[1] *Id.*

Plaintiffs allege the existence of several policies that caused workers to underreport their hours, causing some of the hours they worked not to be reflected in their final paychecks. Doc. 13 at 2–3. First, Plaintiffs contend that Defendant's policy caused them to not clock in until after they had completed their first job of the day. Doc. 13 at 2. Second, because of this policy, they were also not paid for the time spent rounding up supplies before their first job of the day. *Id.* Third, they assert that lunch breaks were automatically docked even when they did not stop for lunch, and instead ate on the run or on the job. *Id.* at 3. Fourth, they claim that they were not always paid for mandatory weekly work meetings. *Id.* Fifth, they aver that they were required to maintain the vehicles and were instructed not to count hours spent waiting for the vehicles to be serviced. *Id.*

Defendant uses a computer system called "Mobile Data" to record when each job is started, in progress, and completed. Doc. 16 at 2–3. Defendant contends that this system is not used for the purposes of measuring weekly work hours and all of the hours are calculated based on written timesheets submitted by the employees. *Id.* at 4–5. Plaintiffs counter that time was

---

[1] To illustrate, an employee who completes 50 gas meter installations in one week will earn $663 for their unit pay ($13.26 * 50). If the employee works 48 hours that week, their average hourly rate is $13.81 per hour ($663/48), and their overtime premium is $6.91 ($13.81/2). The overtime premium, $6.91, is multiplied by the number of hours above 40, here 8, to get $55.28 ($6.91 * 8). The paycheck for that week is the total unit pay ($663) plus their overtime pay ($55.28), or $718.28.

generally kept using the Mobile Data computer system, and that timesheets were only used when the computer system was down. Docs. 13-2 at 2, 13-3 at 3.

In their Motion, Plaintiffs seek to certify the following conditional class under the FLSA:

> All field service representatives and/or service technicians employed by Digco at any time during the three years preceding the Court's entry of an order granting conditional certification and notice ("Putative Class Members").

Doc. 13 at 7. Defendant opposes Plaintiffs' Motion. Doc. 16. The Motion is now ripe for consideration.

## II. Legal Standard

The FLSA mandates that a covered employee's work week is limited to 40 hours, and that any hours worked in excess of 40 must be compensated at a rate of at least 1.5 times the normal hourly pay rate. 29 U.S.C. § 207(a). The FLSA allows employees to bring claims against employers for violations of this overtime requirement, and employees can bring these claims "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

This "consent in writing" language has been interpreted to mean that employees must opt in to FLSA collective actions, in contrast to a Rule 23 class action, which combines the claims of the employees who simply fail to opt out of the class. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Neither the FLSA, nor Fifth Circuit case law provide a rule defining "similarly situated," but the court in *Mooney* recognized two methods of answering the similarly situated question. *Id.* These are: (1) the two-step *Lusardi* approach, in which a class is conditionally

certified based on minimal evidence and can later be decertified by defendant's motion after discovery has taken place, and (2) the *Shushan* approach, which looks to the numerosity, commonality, typicality and adequacy of representation of the class. *Id.* "[T]he prevailing test among the federal courts," including this Court, is the two-step *Lusardi* analysis. *Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013). *See also Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 605 (S.D. Tex. 2005) (quoting *Barnett v. Countrywide Credit Indus., Inc.*, 2002 WL 1023161 at *1 (N.D. Tex. May 21, 2002)).

To complete the first step in the *Lusardi* analysis, a plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012). At this notice stage, addressing the merits of the claims is premature. *Id.* (citing *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 926 (D. Ariz. 2010). Because the notice inquiry generally occurs before discovery, there is a lenient burden on the plaintiff to show that the putative class members are similarly situated. *Heeg*, 907 F. Supp. 2d at 861. Courts generally decide whether the burden is met "based only on the pleadings and any affidavits which have been submitted." *Mooney*, 54 F.3d at 1213–14. While the burden is lenient, the factual showing must be based on competent evidence, and this means that, at the very least, some personal knowledge of the facts is required. *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011) (citations omitted).

In contrast, when a plaintiff moves for conditional certification after discovery, the two-stages of the *Lusardi* analysis collapse into one inquiry, with a higher evidentiary burden on the plaintiff to show that the putative class members are similarly situated. *Barnes v. Abandonment*

*Consulting Servs., L.L.C.*, No. 4:12-CV-01399, 2013 WL 3884198, at *3 (S.D. Tex. July 26, 2013), *report and recommendation adopted sub nom. Barnes v. Abandonment Consulting Servs., LLC.,* No. 12-CV-1399, 2013 WL 12101069 (S.D. Tex. Aug. 12, 2013). The leniency of the burden is commensurate with the amount of discovery that has been completed. *Blake v. Hewlett-Packard Co.,* No. 4:11-CV-592, 2013 WL 3753965, at *5 (S.D. Tex. July 11, 2013). The more the plaintiff has had an opportunity to collect evidence speaking to the similarity of the class members, the heavier the burden placed on the plaintiff to show that similarity. *Id. See McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (finding that the intermediate standard was warranted when the parties had completed depositions and exchanged deposition excerpts, but there was still more discovery to be completed); *Blake v. Hewlett-Packard Co.*, No. 4:11–CV–592, 2013 WL 3753965, at *4 (S.D. Tex. July 11, 2013) (finding intermediate standard warranted when both parties had taken depositions and the record contained hundreds of pages of exhibits).

When Plaintiffs' Motion was filed in this case, the parties had been in discovery for 3 of the 10 months allotted in the Scheduling Order. Doc. 12. Defendant had made initial disclosures of time sheets and vehicle maintenance records, but this evidence only spoke to the merits of the claims, not to whether the putative class members are similarly situated. No depositions had been taken. Accordingly, the Court concludes that not enough discovery had taken place to warrant the intermediate evidentiary requirement and instead applies the more lenient *Lusardi* standard.

III. **Discussion**

   A. **Aggrieved Individuals Exist**

At the first step of the *Lusardi* analysis**,** Plaintiffs need only show that there is a reasonable basis for crediting the assertion that aggrieved individuals exist and the burden is low.

*Heeg*, 907 F. Supp. 2d at 861. In this case, the declaration of Plaintiff Contis avers that there are at least 70 people who held his same position during the relevant time period. Doc. 13-1 at 3. Two other declarations state that there were "many" people in the same position as the declarant. Docs. 13-2 at 3, 13-3 at 3. Because Defendant does not dispute that figure, and because of the interstate nature of the Defendants' operations, it is reasonable to credit Plaintiffs' assertion that there were many people who were compensated according to the same policies as Plaintiffs. *See Heeg*, 907 F. Supp. 2d at 862 (holding that the "existence" factor was met when the plaintiffs submitted the affidavit of at least one worker who alleged she was not paid overtime, and the defendant admitted that there were at least 18 employees who might be eligible under the proposed class definition).

### B. Similarly Situated Individuals Exist

When answering whether employees were similarly situated under *Lusardi*, courts look to whether the putative class members shared the same job duties, supervisors, work location, pay structures, and timekeeping methods. *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 722 (S.D. Tex. 2014). "At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Mooney*, 54 F.3d at 1214, n.8 (quoting *Sperling v. Hoffman–La Roche, Inc.*, 118 F.R.D. at 407).

Here, Plaintiffs held the job title of Gas Field Service Representatives or Gas FSRs. Each of Plaintiffs' declarations states that there are other employees who had similar jobs, with similar hours. Docs. 13-1 at 3, 13-2 at 3, 13-3 at 3. Gas FSRs' job duties included "installing gas meters, reconnecting or disconnecting services, resetting gas meters, [and] relighting household appliances, such as water heaters." Doc. 16-1 at 2. In addition, all Gas FSRs attended a weekly

safety meeting at Defendant's facility. Doc. 16 at 7. Defendant does not argue that the Gas FSRs were treated differently from one another in any way or had different job duties from one another. While manager Mr. Jankowiak stated in his declaration that tasks are sometimes assigned according to the capability of the employee, there is nothing more to suggest that this practice caused any of the employees to be exempt from any particular task. Doc. 16-1 at 2.

With regard to the second inquiry, uniformity of management, Mr. Jankowiak admits that he managed all of the Gas FSRs during the relevant time period. Doc. 16-1 at 1. The work-location prong is relevant for businesses that have multiple branches or locations that could ostensibly have different policies and management styles. Defendant does not appear to have more than one office, so all Plaintiffs and potential opt-in plaintiffs worked at the same location. Accordingly, the third element is satisfied as well.

The parties agree that the majority of the employees were paid on a "piece rate" basis indicating uniformity of pay structure. Docs. 13 at 2, 16 at 3–4. However, the parties dispute the prevailing method of keeping hours. Defendant argues that all of the Gas FSRs tracked their work hours on their own timesheets. Doc 16-1 at 3. Plaintiffs claim that they kept hours on timesheets only when the computer system, Mobile Data, was not working, and they generally used the computer system to record time. Doc. 13 at 6–7. Both of these contentions are consistent with uniform timekeeping among the workers, because neither argument indicates any disparity among the workers in terms of time keeping method, only disagreement as to what that method was.

Defendant also argues that the Plaintiffs have not shown that they were subject to a common policy because the provided timesheets refute the existence of a computerized system. Doc. 16 at 14. This argument fails on two counts. First, the timesheets do not account for all of

the time the employees were employed by Defendant, and are a selection of timesheets from only six non-consecutive months. Docs. 16-1 at 9-25, 16-2. This is consistent with Plaintiffs' contention that timesheets were used only when the computer system was down. Docs. 13-1 at 3, 13-2 at 2, 13-3 at 3. Second, Defendant argues that the computer system "did not exist." Doc. 16 at 1. On the following page, however, Defendant contradicts itself and admits that a computer system, Mobile Data, does exist but that the information from that system was not used for payroll. Doc. 16 at 2. Further, Defendant's initial disclosures appear to show the exact time, accurate to the second, when jobs were completed, indicating that a computer system does exist that at least has the capability of keeping time. *See e.g.* Doc. 16-1 at 13; 16; 19; 22; 25. The question remains whether that computer system was used for payroll, which is an issue related to the merits of the claim, and is not relevant to this Motion.

Additionally, even if the computer system was not used for payroll and all payroll was conducted exclusively from timesheets filled out by employees as Defendant claims, this finding would not indicate that there was no common policy affecting the putative class. The Defendant cites *Newton v. City of Henderson* for the proposition that an employer cannot be held liable for hours that were underreported by employees on timesheets if the employer had no reason to know that the hours were wrong. 47 F.3d 746, 748–49 (5th Cir. 1995). However, that case is inapposite. Here, Plaintiffs are alleging that the Defendants *did* have reason to know the hours were wrong because it instructed employees to underreport hours. Doc. 17 at 4. Defendant's argument requires a finding that the Defendant did not have reason to know the employees were underreporting, which is another merits issue that is irrelevant to this Motion. Under these facts, the putative class members share the same duties, management, pay structure, and time keeping method, and are, therefore, similarly situated.

### C. Opt-in Individuals Exist

Courts following the *Lusardi* approach require a showing that the similarly situated individuals identified in the first two factors actually want to join the lawsuit. *Heeg*, 907 F. Supp. 2d at 861. In another case within this district, the court noted that while affidavits from potential plaintiffs who desired to opt in were ideal for this prong, they are not required. *McKnight*, 756 F. Supp. 2d at 805 (citing *Simmons v. T-Mobile USA, Inc.*, No. CIV A H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007)). A named plaintiff can bring other evidence to show that others would likely seek to join the law suit. *McKnight,* 756 F. Supp. 2d at 805 (citing *Simmons*, 2007 WL 210008, at *9). In *McKnight*, the plaintiff's declaration stated: "There are a lot of people who worked for the Defendants over the last three years, and . . . [we] would talk about . . . whether it was fair or legal for the club to keep money from our tips. I know there are other people affected by this policy that would be interested in knowing about this case and who would consider participating." *Id.* The court held that this statement, along with the fact that six plaintiffs had already joined, met the lenient burden placed on the plaintiffs to show that others wished to join. *Id.*

Here, Plaintiffs have made statements similar to those made by the plaintiffs in *McKnight*. Plaintiffs state that they "know that many other current and former employees would be interested to know about his lawsuit, because they would want to join and recover the wages owed to them[,]" and that they discussed hours and pay with one another. Docs. 13-1 at 3, 13-2 at 3, 13-3 at 3. Additionally, since filing the lawsuit, two individuals, Brett Matute and Cody Hamm, have filed notices of consent to demonstrate their desire to opt-in to the lawsuit, and there are now a total of six plaintiffs. Docs. 5, 9. Defendants make no arguments that the putative class members would not wish to join the lawsuit if notified. Accordingly, the Court is satisfied

that there are likely others among the current and former Gas FSRs who would want to join this lawsuit if notified.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Conditional Certification and Issuance of Notice to Potential Class Members is hereby **GRANTED**. Accordingly, the following class is conditionally certified: All Gas FSRs or Service Technicians employed by Digco at any time during the three years preceding the Court's entry of this Order. It is further

**ORDERED** that within 10 days of the entry of this Order, Defendant must disclose to Plaintiffs the names, last known addresses, email addresses and mobile phone numbers of putative class members in a usable electronic format. Within 10 days of Defendant providing this information, Plaintiffs shall send copies of the notice and consent forms to putative class members, and may send a second copy 30 days after the first copy is sent in order to confirm receipt. 60 days from the first mailing of notice will be the deadline for putative class members to file their notice and consent forms. Class members who have not submitted their notice and consent forms by this date may not join the lawsuit unless stipulated to by the parties or good cause is shown. The Court has read the proposed notice and consent form and finds it acceptable, and the Defendant has not argued that the notice form or the notice schedule is improper.

SIGNED at Houston, Texas, this 15th day of August, 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE